Filed 7/23/26  In re A.H. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

| | |
|---|---|
| In re A.H. et al., Persons Coming Under the Juvenile Court Law. | C104650 |
| SHASTA HEALTH AND HUMAN SERVICES AGENCY , <br>     Plaintiff and Respondent, <br><br>     v. <br><br> S.S., <br>     Defendant and Appellant. | (Super. Ct. Nos. 22JV3234201 & 22JV3234301 ) |

Appellant S.S. is the mother of the two minors and appeals from the juvenile court's orders terminating parental rights.  (Welf. & Inst. Code, §§ 366.26, 395.[1])  Mother claims the Shasta County Health and Human Services Agency (Agency) failed to comply with the inquiry and notice requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and the juvenile court abused its discretion when it found the ICWA did not apply.  The Agency concedes the issue and agrees that

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

1

conditional reversal is appropriate. We accept the concession and will conditionally reverse and remand for further proceedings related to the ICWA.

## ICWA BACKGROUND

In July 2022, the Agency filed a section 300 petition on behalf of the two young minors. At that time, the social worker completed the form attached to the petition stating both parents gave her reason to believe the minors were or might be Indian children. However, the detention report filed the same day noted both parents denied any Native American ancestry.

Thereafter, and for the remainder of the dependency proceedings, mother confirmed there was no Indian ancestry on the maternal side of the family. However, she informed the juvenile court that it was possible father had Indian ancestry on his mother's (paternal grandmother's) side that was believed to be Cherokee or Sioux. Father also reported he had possible Indian ancestry but stated he was unsure of the identity of the tribe and he was not an enrolled member of any federally recognized tribe. The social worker attempted to contact the paternal grandparents to make further ICWA inquiry but did not receive a response.

On January 13, 2023, the juvenile court sustained the allegations in the petition, declared the minors dependents of the juvenile court, and found the ICWA was pending verification. The court also found father to be the minors' presumed father.

On March 6, 2023, the Agency filed a supplemental petition pursuant to section 387. At the June 20, 2023 review hearing, the juvenile court asked both parents whether they had any additional information regarding possible Indian ancestry. Both parents said they did not. The court instructed the parents to notify the Agency immediately with any new information.

From June 2023 to December 2023, the Agency reported, and the juvenile court found, that the ICWA was still pending verification.

On January 12, 2024, the Agency filed a supplemental ICWA addendum report detailing its ICWA inquiry efforts. The Agency reportedly sent relative notification letters to 19 maternal and paternal family members identified via a family finding search, 13 of whom had not responded. The identities of those relatives were not included in the report. Paternal grandmother R.C. reported her mother V.G. (paternal great-grandmother) had been "kicked out" of the Sioux Tribe and was now deceased so there was no means of tracing her history or identifying possible enrollment numbers. The social worker sent a request, via certified mail, to the Bureau of Indian Affairs (BIA) for verification that neither parent was eligible for enrollment in the Cherokee or Sioux Tribes. The social worker also contacted, via email and certified mail, the BIA and all known Sioux tribes (13 in all) "with all known and gathered family information" to inquire about the minors' eligibility for membership in the tribes. None of the tribes or agencies listed in the report had responded to the inquiry. The Agency recommended the juvenile court find the ICWA inapplicable. The January 2024 status review report echoed that recommendation.

On January 16, 2024, after considering the Agency's reports, the juvenile court found the ICWA did not apply.

In June 2024, the Agency reported having received no new statements or information regarding the ICWA since the juvenile court's January 2024 finding that the ICWA does not apply. Thereafter, the Agency filed a supplemental petition (§ 387), at which time the social worker again indicated her ICWA inquiry of mother gave her no reason to believe the minor was or might be an Indian child. Mother was present at the initial hearing on the supplemental petition. Father was not, as he was incarcerated in state prison. When mother indicated there was no Indian ancestry on her side, maternal grandfather S.S., who was also present, agreed but noted there might be Indian ancestry "on the dad's side."

The July and August 2024 reports reiterated the juvenile court's previous ICWA finding. At the August 27, 2024 jurisdiction/disposition hearing, mother confirmed she had no Indian ancestry and maternal grandfather S.S. reiterated there was possible Indian ancestry on father's side of the family. The court sustained the supplemental petition, again found the ICWA did not apply, and set the matter for a section 366.26 hearing.

At the December 13, 2024 section 366.26 hearing, maternal grandfather S.S. informed the juvenile court he had no new information regarding possible Indian ancestry on the family's paternal side. The court reiterated its prior ICWA finding and continued the hearing. After several more continuances, the section 366.26 hearing finally commenced on August 29, 2025. Mother was present but father was still incarcerated in state prison. The court maintained its previous finding that the ICWA did not apply and terminated parental rights.

## DISCUSSION

Mother contends the juvenile court abused its discretion when it found the ICWA did not apply because the Agency failed to undertake proper ICWA inquiry. She claims the Agency failed to identify and locate maternal and paternal relatives, make ICWA inquiry of those relatives, include pertinent ICWA information in its reports, and properly communicate with the relevant tribes by providing family history and notice and asking about membership or citizenship eligibility. Mother also claims the court improperly directed father to undertake his own ICWA inquiry. The Agency concedes there were deficiencies in its ICWA inquiry efforts and that conditional reversal is appropriate.

Child welfare agencies and juvenile courts "have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child. (§ 224.2, subd. (a).) This 'duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an

4

Indian child.' " (*In re Dezi C.* 16 Cal.5th 1112, 1131-1132 (*Dezi C.*).) This duty of inquiry " 'continues throughout the dependency proceedings.' " (*In re J.C.* (2022) 77 Cal.App.5th 70, 77.)

"When the agency has 'reason to believe' that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required. (§ 224.2, subd. (e); see also [Cal. Rules of Court,] rule 5.481(a)(4).)" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1132, fn. omitted.) Further inquiry includes "[i]nterviewing the parents, Indian custodian, and extended family members" to gather the required information to ascertain whether there is a "reason to know" the child is an Indian child. (§ 224.2, subd. (e)(2)(A).) In this regard, contact with the relevant tribes "shall include sharing information identified by the tribe as necessary for the tribe to make a membership or citizenship eligibility determination…." (§ 224.2, subd. (e)(2)(C).) "If the inquiry establishes a reason to know an Indian child is involved, notice must be provided to the pertinent tribes. (§ 224.3, subds. (a), (b); 25 U.S.C. § 1912(a).)" (*Dezi C.,* at p. 1133.)

A juvenile court must make a finding whether the ICWA applies. (*H.A. v. Superior Court* (2024) 101 Cal.App.5th 956, 965-966; *In re E.W.* (2009) 170 Cal.App.4th 396, 403.) A juvenile court's finding that the ICWA does not apply is "subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).) Its "fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.) Given that the parties agree the information before the juvenile court was inadequate at the time of the court's ruling, we will conditionally reverse.

Here, the Agency did make some effort to comply with the ICWA inquiry requirements. However, as mother argues, there are a number of relatives the Agency was aware of but of whom it either made no ICWA inquiry or made little or no record of

5

having done so. These relatives included, among others, the maternal grandparents S.S. and D.S., maternal uncle M.S., who lived with the maternal grandparents, maternal great-aunt Sandra S., paternal grandparents N.H. and R.C., paternal aunt K.C., paternal great-grandparents G.R. and N.R., and paternal great-aunt M.R. We note that maternal grandfather S.S. was present in court on a number of occasions. "Agencies are already tasked with investigating the circumstances underlying the child's removal and identifying and locating the child's extended family members [citation]; it is a rather simple task to ask those family members about Indian ancestry in this process. In fact, courts have characterized the duty of inquiry as 'slight and swift.' " (*Dezi C., supra,* 16 Cal.5th at p. 1143.) "Thus, the *Dezi C.* court envisioned that a child welfare agency's investigation would include an investigation into the circumstances of the referral and the extended (and other) family members for purposes of placement of the child and ICWA." (*In re Claudia R.* (2025) 115 Cal.App.5th 76, 87.) Section 224.2 " 'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries.' " (*Dezi C.,* at p. 1140.) However, the " 'operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.' " (*Ibid.*)

The Agency also made some effort to comply with the ICWA inquiry requirements by communicating with the BIA and the Cherokee and Sioux Tribes. However, as mother argues, the Agency's communication with the Cherokee Tribes did not request the required information. (§ 224.2, subd. (e)(2)(C) [contact with the tribes "shall include sharing information identified by the tribe as necessary for the tribe to make a *membership or citizenship eligibility* determination…." (Italics added.)].)

Mother also contends the juvenile court erred when it directed father to undertake the ICWA investigation and report back to the Agency. To the extent the Agency is delegating the inquiry to father without performing its own inquiry, we agree. While the

6

parents certainly play a vital role in providing information regarding possible Indian ancestry, the courts and the child welfare agencies are charged with the affirmative and continuing duty of ICWA inquiry, not the parents. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1130.)

Finally, given we have accepted the Agency's concession that it failed to undertake a proper ICWA inquiry and the matter must be remanded for limited ICWA proceedings, we need not address mother's claim that the juvenile court abused its discretion in finding the ICWA did not apply.

## DISPOSITION

The juvenile court's orders terminating parental rights are conditionally reversed. On remand, the juvenile court shall order the Agency to further comply with the inquiry and notice provisions of the ICWA, as well as the requirements of sections 224.2 and 224.3 and the documentation provisions of California Rules of Court, rule 5.481(a)(5). If the juvenile court thereafter finds the further inquiry was proper and adequate, due diligence has been conducted, and the ICWA does not apply, the orders terminating parenting rights shall be reinstated. If, however, the juvenile court concludes the ICWA

applies, the juvenile court is ordered to conduct a new section 366.26 hearing and proceed in accordance with the ICWA and California implementing provisions.

/s/

MESIWALA, J.

We concur:

/s/

MAURO, Acting P. J.

/s/

WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.